**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

        **Plaintiff,**

        v.

GREGORIO SÁNCHEZ-CHALA,

        **Defendant.**

**CRIM. NO. 22-234 (RAM)**

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

      Pending before the Court is Defendant Gregorio Sánchez-Chala's ("Sánchez-Chala" or "Defendant") *Motion to Suppress* ("*Motion*"); the Government's *Supplemental Briefing in Compliance* ("*Supplemental Briefing*"); and Magistrate Judge Héctor Ramos-Vega's *Report and Recommendation* ("*R&R*"). (Docket Nos. 51, 63, and 111). The Magistrate Judge recommends that Defendant's *Motion* should be denied. (Docket No. 111). Having reviewed the record *de novo*, Defendant's objections to the *R&R* ("*Objections*"), and the Government's response thereto ("*Response*"), the Court **NOTES** the Government's *Supplemental Briefing*, **ADOPTS** the *R&R* **AS MODIFIED**; and **DENIES** Defendant's *Motion to Suppress*.

**I.  BACKGROUND**

      This case arises out of an at-sea interdiction by the Puerto Rico Police Bureau ("PRPB") United Forces for Rapid Action ("FURA" for its Spanish acronym) with Defendant's vessel *La Zulyi* on May

11, 2022. (Docket No. 1-1). FURA agents noted that the vessel was navigating from international waters into Puerto Rico territorial waters and stopped the vessel to conduct an inspection of the vessel's documents. Id. at 3. Sánchez-Chala was one of three occupants aboard the vessel at the time of the interdiction. Id. at 2-3. _La Zulyi_ was escorted to Aguadilla for a secondary inspection. At Aguadilla, the FURA agents began boarding _La Zulyi_. Id. Defendant provided written consent for the vessel to be searched. Id. at 3.

Following FURA's boarding of _La Zulyi_, a PRBP agent worked with a search-dog to search the vessel. Id. The search-dog positively alerted to the presence of narcotics in the boat. Id. The FURA agents advised Defendant the boat would have to be transported to a different location for further investigation. Id. The FURA agents then released Defendant and the two other occupants of the vessel. Id.

Seven days later, on May 18, 2022, an x-ray scan of _La Zulyi_ showed hundreds of brick-like objects in a hidden compartment under the center console portion of the vessel. Id. The vessel was then searched again, this time revealing 258 packages that tested presumptively positive for cocaine. Id. In total, the packages weighed around 311.8 kilograms. Id.

That same day, Defendant appeared voluntarily to the Customs and Border Protection ("CBP") San Juan Port Station, where the vessel was being held. Id. at 4. Upon his arrival, he was arrested. Id. Various phones were also seized, along with $3,504.00 in cash that Defendant had with him at the time of arrest. (Docket Nos. 1-1 at 4; 51 at 5-6, 11 and 55 at 4-5). During one of the searches, a global positioning system device ("GPS") was also seized. (Docket No. 1-1 at 4).

On May 26, 2022, a grand jury in this district returned an indictment charging Sánchez-Chala with six counts: conspiracy to possess with intent to distribute cocaine aboard a vessel of the United States in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) (Count One); possession with intent to distribute cocaine aboard a vessel of the United States, aiding and abetting in violation of 46 U.S.C. § 70503(a)(1) (Count Two); conspiracy to import cocaine in violation of 21 U.S.C. §§ 952(a), 960(a), 960(b)(1)(B)(ii), and 963 (Count Three); importation of cocaine in violation of 21 U.S.C. §§ 952(a), 960(a), and 960(b)(1)(B)(ii) (Count Four); conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846 (Count Five); and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii)) (Count Six). (Docket No. 10).

On April 22, 2024, Defendant filed his *Motion to Suppres* seeking to suppress all evidence seized in this case. (Docket No. 51 at 1). He specifically challenges the warrantless searches and seizures of *La Zulyi* and his vehicle, a Ford F-150[1] (the "vehicle" or "F-150") that were carried out on May 11 and May 18, 2022, as well as all evidence stemming from those searches. Id. at 1, 17. He also challenges the seizure of: (a) the $3,504.00 in cash he had with him at his arrest; and (b) the various cell phones found in the F-150. Id. at 1-2, 17.[2] Defendant argues the warrantless searches of his vessel and F-150 were illegal because no warrant exception applied and thus all other evidence obtained in this case is therefore tainted as the fruit of illegal searches. (Docket No. 51 at 1-2). He admits to signing a police waiver regarding his vessel, but claims his consent was only "for the vessel to be verified in his presence during that same date." (Docket No. 55 at 10). Regarding the F-150, cell phones, and cash seized at the time of his arrest, Sánchez-Chala argues there is no warrant exception

---

[1] The Affidavit in Support of Complaint does not reference the seizure of Defendant's vehicle. (Docket No. 1-1). However, in its *Response in Opposition*, the Government notes that the vehicle was impounded by law enforcement. (Docket No. 55 at 16).

[2] Defendant mentions the search of the *La Zuyli*'s GPS and the extractions of the cell phones found in the F-150. (Docket No. 51 at 1, 3). However, he does not develop any argument for why the contents of the GPS or cell phones should be suppressed apart from his overarching argument that the searches of the *La Zuyli* and the Vehicle were illegal.

that would have made the search or seizure of the cash, cell phones, and F-150 lawful. (Docket No. 51 at 1-2, 5-6).

The Government filed its *Response in Opposition* ("*Opposition*") on May 24, 2022. (Docket No. 55). The Government contends FURA's stop of the vessel was lawful as a document-and-safety inspection, and that Defendant consented in writing to the subsequent search. Id. at 9-10. Regarding the cash and cell phones, the Government argues their discovery and seizure were legal under the search-incident-to-arrest doctrine. (Docket No. 55 at 16). The Government contends it was justified in impounding the F-150 because a database search showed Defendant did not own it. Id. Finally, the Government argues suppression is unwarranted since Defendant did not show bad faith by the law enforcement officers. Id. at 14-15. Defendant did not file a reply.

On July 9, 2024, the Court filed an order instructing the Government to file supplemental briefing addressing: (a) whether the initial stop by FURA agents of Defendant's vessel, *La Zulyi*, on May 11, 2022, was lawful; and (b) if the initial stop were unlawful, what effect, if any, that would have on the validity of Defendant's subsequent written consent to search the vessel. (Docket No. 58).

The Government filed its *Supplemental Briefing* on August 16, 2024. (Docket No. 63). With regards to the legitimacy of the stop

conducted by FURA agents, the Government highlighted that CBP and
FURA have a standing agreement that recognizes FURA's delegated
authority to conduct border searches pursuant to 19 U.S.C. §§ 1401
and 1581. (Docket Nos. 63 at 2-3; 63-1 at 1). Lastly, the
Government argued that even if the stop was unlawful, Defendant's
subsequent consent was sufficiently attenuated to remove any taint
of illegality because: (a) the presence of intervening factors
justified seeking consent; and (b) of the lack of misconduct on
behalf of the FURA officials. Id. at 4-6. On September 10, 2024,
Defendant filed his *Reply*. (Docket No. 66). Sánchez-Chala takes
issue with the fact that the agreement is not dated and argues
that this puts into question its validity. Id. ¶ 2.

On October 30, 2024, the Court referred Defendant's *Motion to
Suppress* to a Magistrate Judge. (Docket No. 68). Magistrate Judge
Ramos-Vega held the suppression hearing on February 25, 2025.
(Docket No. 94). At the hearing, the Magistrate Judge found that
Defendant did not provide statements under oath, supporting
evidence, or an offer of proof to meet his burden to obtain an
evidentiary hearing or to establish standing to challenge the
searches at issue in the case. (Docket No. 94 and 142 at 46).
Consequently, the Magistrate Judge limited the scope of the hearing
to the factual dispute related to the initial intervention at sea

and the lawfulness of the seizure of Defendant and his vessel. (Docket No. 94).

On March 31, 2025, Magistrate Judge Ramos-Vega issued a twenty-four-page *R&R* recommending that Sanchez-Chala's *Motion to Suppress* be denied. (Docket No. 111). Therein, the Magistrate Judge reiterated his finding that Defendant failed to establish standing to challenge the searches at issue. Id. at 12. With regards to the validity of the initial intervention at sea, the Magistrate Judge found that the evidence presented established that the vessel navigated from international waters into the territorial waters of the United States. Id. at 19. Therefore, FURA agents, acting as customs officers under the authority of 19 U.S.C. § 1581, could conduct a routine search without the requirement of probable cause pursuant to the border search exception. Id. at 17-19. Furthermore, the Magistrate Judge concluded that the subsequent detention and investigation of the vessel constituted a valid extended border search because FURA agents developed a reasonable suspicion that criminal activity was afoot given the inconsistent answers received, the nervous demeanor of one of the occupants, and the fact that the boat appeared to be too heavy for the number of people on it. Id. at 9, 20-21. Lastly, the Magistrate Judge found that even if the original intervention was unlawful, he would not

recommend  suppression  of  the  evidence  because  Defendant's
subsequent consent was sufficiently attenuated. Id. at 22.

Defendant filed his objections to the *R&R* on May 19, 2025.
(Docket No. 134). Sanchez-Chala contends that the issue of whether
he had standing to seek the suppression of evidence was decided by
the District Court when it referred the motion to the Magistrate
Judge for a hearing. Id. at 3. Defendant also argues that the
present case is distinguishable from Vilches-Navarrete because the
vessel at issue is not a commercial craft. Id. at 6. Lastly,
Sanchez-Chala takes issue with the *R&R*'s findings that: (a) the
vessel was navigating from international waters; (b) the FURA
agent's testimony was credible; and (c) that he gave valid consent
to the search. Id. at 10-14. Accordingly, Defendant asks the Court
to "re-refer" the motion to a Magistrate Judge or reject the *R&R*.
Id. at 14.

The Government filed a *Response to Defendant's Objections* on
June 23, 2025. (Docket No. 149). The Government asserts that
Defendant's argument that the Court implicitly ruled on the issue
of standing by ordering an evidentiary hearing was raised for the
first time in his *Objections* and thus is waived. Id. at 4. The
Government also alleges that the FURA stop was a valid border
search, Vilches-Navarrete was correctly applied, and that the FURA

Agent's testimony was credible. Id. at 5-17. Defendant did not
file a reply.

## II.  LEGAL STANDARD

The Court may refer certain motions, including motions to
suppress evidence, to a Magistrate Judge for a R&R. *See* 28 U.S.C.
§ 636(b)(1)(B); Fed. R. Crim. P. 59(b)(1); *see also* L. CV. R.
72(a). A party may file written objections to the report within
fourteen days of service. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim.
P. 59(b)(2).

A district court "shall make a de novo determination of those
portions of the [R&R] to which objection is made," and "may accept,
reject, or modify" the R&R. 28 U.S.C. § 636(b)(1)(C); *see also* L.
CV. R. 72(d). The district judge's review need only evaluate the
disputed portions of the R&R. United States v. J.C.D., 861 F.3d 1,
6 (1st Cir. 2017) (citing Gioiosa v. United States, 684 F.2d 176,
179 (1st Cir. 1982)). Moreover, parties that advance new theories
for the first time in objections to an R&R waive those arguments.
United States v. Mendoza-Maisonet, 962 F.3d 1, 16-17 (1st Cir.
2020) (citing United States v. Rosado-Cancel, 917 F.3d 66, 69 (1st
Cir. 2019)).

### III. DISCUSSION

**A. <u>Standing and Scope of the Hearing</u>**

In his *Objections* to the R&R, Sanchez-Challa challenges the
Magistrate Judge's determination that Defendant failed to
establish standing and thus the evidentiary hearing should be
limited in scope. At the evidentiary hearing, the parties engaged
in extensive argumentation regarding whether Defendant established
standing to challenge the searches at issue in this case. (Docket
No. 142 at 21-47). When asked by Magistrate Judge Ramos-Vega why
Defendant had not produced a sworn statement or any evidence to
establish standing, defense counsel responded that she believed
that she did not have to because the pleadings were already signed
by an attorney, *i.e.* herself, and that the issue had already been
resolved by the referral of the motion. (Docket No. 142 at 23). To
establish standing with regards to the vessel, defense counsel
argued that Sanchez-Chala is the title holder of the vessel and
that he accordingly provided documentation to the Government to
that effect. <u>Id.</u> at 24. Although defense counsel noted that
Sanchez-Chala was prepared to testify in general, she did not
provide any specific offer of proof to establish standing as to
the vehicles and cellphones. <u>Id.</u> at 30-31, 41-44.

The Magistrate Judge ultimately concluded that Defendant had
not met his burden to establish standing due to the lack of

supporting documents or statements under oath. This, even though the Government had consistently raised the issue of lack of standing throughout its briefing after the *Motion to Suppress* was filed in April of last year. Consequently, Magistrate Judge Ramos limited the scope of the hearing to the legality of the initial stop.

1. *Standing is a threshold issue*

In <u>United States v. Aguirre</u>, the First Circuit noted that "[w]hat courts have come to refer to as "standing"—the purchase necessary to come to grips with an allegedly illegal search or seizure—is unlike, say, the presumption of innocence: it does not automatically devolve upon every accused." 839 F.2d 854, 856 (1st Cir. 1988). Instead, "[s]tanding is highly contextual, consisting of general guidelines to distinguish permissible police interference from unconstitutional government intrusion." <u>United States v. Agosto-Pacheco</u>, No. CR 18-082 (FAB), 2020 WL 4937791, at *3 (D.P.R. Aug. 24, 2020) (citing <u>United States v. Almeida</u>, 748 F.3d 41, 47 (1st Cir. 2014)).

Therefore, "[b]efore embarking upon the merits of a suppression challenge, a criminal defendant must show that he had a reasonable expectation of privacy in the area searched and in relation to the items seized." <u>Aguirre</u>, 839 F.2d at 856. *See also* <u>United States v. Symonevich</u>, 688 F.3d 12, 19 (1st Cir. 2012) ("The

Fourth Amendment's protection against unreasonable searches may
only be claimed where a defendant demonstrates that he or she
personally has a reasonable expectation of privacy in the place
searched.").

2. *The Applicability of Vilches-Navarrete*

Although the Magistrate Judge conceded that he did not believe
there was a controversy regarding Defendant's ownership of the
vessel, he found that United States v. Vilches-Navarrete, 523 F.3d
1 (1st Cir. 2008) precluded Defendant's standing over the hidden
compartment of the vessel. Id. at 26-27. In Vilches-Navarrette,
the First Circuit held that "society would not recognize a
justifiable expectation of privacy in a hidden compartment created
for the express purpose of hiding illicit contraband. To hold
otherwise would grant smugglers standing under the Fourth
Amendment solely because they were careful in hiding their illicit
merchandise." 523 F.3d at 14 (quotations omitted). Defendant
contends that the present case is distinguishable because *La Zulyi*
is small personal vessel whereas the vessel at issue in Vilches-
Navarrete was a commercial one. (Docket No. 134 at 5-6). However,
the Court need not determine whether Vilches-Navarrete applies
because, even assuming that Defendant has standing over the hidden
compartment, the initial stop and subsequent search of the vessel
was done in compliance with the law.

Criminal No. 22-234 (RAM)                                          13

    3. *Defendant has not established standing over the seized
       Vehicles and Cellphones*

    As to the other seized items, namely vehicles and cellphones,
Defendant has failed to provide any evidence or offer of proof to
establish standing. *See* <u>United States v. Morales Perez</u>, No. CR 23-
300 (FAB-MDM) 2025 WL 1799654, at *12 (D.P.R. June 30, 2025).
(concluding that a "defendant's failure to swear out an affidavit
in support of his Motion to Suppress necessarily means that he has
failed to assert any privacy interest.").

    At the hearing, defense counsel noted that Defendant was
driving one of the vehicles but conceded that neither of the
vehicles are in Defendant's name. (Docket No. 142 at 30). She then
proceeded to challenge the Government's authority to retain the
car instead of allowing someone to retrieve them after Defendant's
arrest but did not make an offer of proof as to Defendant's privacy
interest with regards to the vehicle. <u>Id.</u> Defense counsel made no
arguments as to the cellphones within the vehicle. In the absence
of a sworn statement, evidence or even an offer of proof, the Court
cannot determine whether Defendant had lengthy possession and a
pattern of using the vehicle which would help establish a
reasonable expectation of privacy or if he merely engaged in
casual, informal or temporary use which cannot establish a
legitimate expectation of privacy for an infrequent user a vehicle.

Criminal No. 22-234 (RAM)                                         14

*See* United States v. Dunnell, No. 22-CR-10065-IT-7, 2024 WL
3431084, at *5 (D. Mass. July 16, 2024) (citing Almeida, 748 F.3d
at 48).

4. *The magistrate Judge did not err by limiting the scope of
the evidentiary hearing*

Courts cannot address the merits of a suppression challenge
until the defendant has met their burden of establishing standing.
*See* Aguirre, 839 F.2d at 856. Therefore, the Magistrate Judge had
a duty to evaluate whether Defendant's burden had been met *before*
reaching the merits, moreover, considering that Sanchez-Chala had
notice and ample time to evince standing. The Magistrate Judge
allowed Defendant to argue why he had standing and make an offer
of proof to that effect. Upon *de novo* review, the Court adopts
Magistrate Judge Ramos-Vega's finding that Defendant's proffer was
insufficient to establish standing in this case. Furthermore,
Defendant has not cited to, and the Court has not found, any
binding case law for the propositions that: (a) magistrate judges
cannot limit the scope of evidentiary hearings; or (b) that a
referral for an evidentiary hearing is an implicit determination
that a defendant has met their burden of establishing standing.[3]

---

[3] It is also worth noting that a court may choose not to hold an evidentiary
hearing when a defendant offers no affidavits or other evidence in support of
his motion to suppress. United States v. Calderón, 77 F.3d 6, 9 (1st Cir. 1996).

B. **The legality of the Initial Stop and Subsequent Investigation**

As discussed in the *R&R*, the legal standard used to determine if the initial intervention with the vessel was lawful depends on: (a) whether the vessel crossed the border from international waters into territorial waters; or (b) if no border crossing occurred. (Docket No. 111 at 15). Magistrate Judge Ramos-Vega found that the testimony provided at the hearing by FURA Agent Pedro Crespo-Dones ("Agent Crespo") established that *La Zulyi* navigated from international waters into the territorial waters of the United States. Id. at 19. Defendant objects to this finding, arguing that Agent Crespo's testimony was not credible and insufficient to establish that a border crossing occurred.

District courts "'generally will not disturb the credibility determinations of a magistrate judge[,]' [e]specially when, as in this case, the record supports such determinations." United States v. Colon-Torres, No. CR 20-175 (ADC), 2023 WL 4883182, at *4 (D.P.R. Aug. 1, 2023) (quoting United States v. López-Ortiz, 648 F.Supp. 2d 241, 249 (D.P.R. 2009)). Magistrate Judge Ramos-Vega found that Agent Crespo's testimony was consistent, "never wavered regarding how the events transpired," and did not exhibit any lack of candor or dishonesty. (Docket No. 111 at 22). The *R&R* also noted that Agent Crespo was "not confronted with anything tending to

Criminal No. 22-234 (RAM)                                        16

show mendacity or fabrication" and that his failure to answer certain questions did not diminish his credibility. Id.

The Court reviewed the transcript of the February 25, 2025, hearing and adopts the Magistrate Judge's credibility determinations. *See* United States v. Hernandez-Rodriguez, 443 F.3d 138, 147-48 (1st Cir. 2006) (citing United States v. Raddatz*,* 447 U.S. 667, 680-81 (1980)) ("The Supreme Court has held that a district judge need not hear the live testimony of a witness in order to *accept* the credibility determination of a magistrate judge.").

After conducting a *de novo* review, the Court adopts the R&R's conclusions that: (a) the border search exception applies and thus there was no Fourth Amendment violation during the initial stop of *La Zulyi* or its subsequent detention; (b) the record established that the FURA agents developed a reasonable suspicion that criminal activity was afoot; and (c) further investigation of the vessel was not unreasonable pursuant to the extended border search doctrine. (Docket No. 111 at 20-21).

C. **The Validity of Defendant's Consent**

Lastly, the *R&R* finds that even if the initial intervention was unlawful, suppression is not warranted because Sanchez-Chala's consent to the search was "sufficiently attenuated." Id. at 22. Defendant objects to this filing. (Docket No. 134 at 14).

The Court notes that in his *Motion to Suppress*, Defendant mentions in passing that he was questioned during a "prolonged period of detention," but does not state that he signed the waiver because of this. (Docket No. 51 at 8). In his *Reply* pursuant to the Court's order for supplemental briefing, Defendant claims he was not free to leave for over four to five hours, that he felt harassed to sign the waiver, and believed that if he did not sign the waiver he would go to jail. Although Sánchez-Chala argues that he was harassed, courts have found voluntary consent to search in more extreme circumstances. *See* <u>United States v. Esquilin</u>, 42 F.Supp. 2d 20, 28 (D. Me. 1999), <u>aff'd,</u> 208 F.3d 315 (1st Cir. 2000)(collecting cases); <u>United States v. Arango-Correa</u>, 851 F.2d 54, 58 (2d Cir. 1988) (finding that being questioned in custody for five hours on its own did not affect defendant's ability to give a knowing and willing consent).

In the case at bar, the Consent to Search Form is clearly titled "Consent to Search" and informed Defendant of his right to refuse and revoke consent to the search as required. (Docket No. 55-1). The record does not establish that he was in a "possibly vulnerable subjective state" nor that the FURA agents engaged in coercive tactics. *See* <u>United States v. Vazquez</u>, 724 F.3d 15, 18 (1st Cir. 2013) (holding that to determine the presence of coercion, courts must evaluate the "totality of circumstances,

including the consenting party's knowledge of the right to refuse
consent; the consenting party's possibly vulnerable subjective
state; and evidence of inherently coercive tactics, either in the
nature of police questioning or in the environment in which the
questioning took place.").

Further, the Court agrees with Magistrate Judge Ramos-Vega
that Sanchez-Chala's argument that his consent was limited in scope
to "verifying" the vessel as opposed to "searching" it does not
pass muster, as there is not a relevant distinction between a
consent to "verify" vis-à-vis a consent to "search" in this
context. (Docket Nos. 111 at 23; 55-1); *see also* Florida v. Jimeno,
500 U.S. 248, 251 (1991) ("The standard for measuring the scope of
a suspect's consent under the Fourth Amendment is that of
'objective' reasonableness—what would the typical reasonable
person have understood by the exchange between the officer and the
suspect?"). In light of the above, having considered the totality
of the circumstances, the Court concludes that: (a) Sánchez-
Chala's consent was valid and given voluntarily, without coercion
on behalf of FURA agents; (b) that the search fell within the scope
of Defendant's consent; and (c) that Defendant did not provide any
evidence nor allegations to establish that he revoked his consent.

Criminal No. 22-234 (RAM)                                          19

### IV.  CONCLUSION

"Where, as here, a [Magistrate] has produced a firstrate work product, a reviewing tribunal should hesitate to wax longiloquent simply to hear its own words resonate." Chen v. I.N.S., 87 F.3d 5, 7 (1st Cir. 1996) (citation and quotation omitted).

Having reviewed the record *de novo*, the Court hereby **NOTES** the Government's *Supplemental Briefing* at Docket No. 63; **ADOPTS** the Magistrate Judge's *Report and Recommendation* at Docket No. 111 **AS MODIFIED**; and **DENIES** Gregorio Sanchez-Chala's *Motion to Suppress* at Docket No. 51.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of August 2025.

                              s/Raúl M. Arias-Marxuach
                              UNITED STATES DISTRICT JUDGE